UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                    -against-

JOHN DEROUNIAN,

                    Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
16-CR-412 (JMA)

FILED
CLERK

12/22/2020 3:36 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Seth D. DuCharme
   Acting United States Attorney
Mark E. Misorek
Robert W. Schumacher, II
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
   *Attorneys for the United States*

Peter E. Brill
Brill Legal Group, P.C.
150 Motor Pkwy, Suite 401
New York, NY 11788
   *Attorney for Defendant John Derounian*

**AZRACK, United States District Judge:**

Pending before the Court is the motion for compassionate release of defendant John Derounian ("Defendant"). (ECF No. 146.) For the reasons set forth below, the Court DENIES Defendant's motion.

## I. BACKGROUND

### A. Guilty Plea and Sentence

On June 25, 2018, Defendant pleaded guilty to mail fraud and possession of child pornography, in violation of 18 U.S.C. §§ 1341, 2252(a)(4)(B) and 2252(b)(2), respectively. (ECF No. 84.) Over the course of eight months, Defendant was the mastermind of a scheme to pilfer

the estate of his deceased, elderly landlord of more than $1 million dollars. (ECF No. 98 at ¶ 8.) During the course of the scheme, Defendant executed and filed a fraudulent will in New York State Probate Court, caused his deceased Jewish victim to be cremated, and looted her assets. (Id. at ¶¶ 7-22.) Separate and apart from the fraudulent scheme, Defendant possessed child pornography of prepubescent minors, toddlers, and infants being sexually assaulted. (Id. at ¶ 23.) This Court sentenced him to 121 months of incarceration followed by 5 years of supervised release. (ECF No. 114.) Defendant is currently incarcerated at FCI Fort Dix and scheduled to be released on February 3, 2025. (ECF No. 147 at 4.)

### B. The Instant Motion

On June 4, 2020, Defendant submitted a request to the staff at FCI Fort Dix to seek compassionate release. (ECF No. 146-1.) On September 3, 2020, the warden denied Defendant's motion for compassionate release. (Id.)

On September 25, 2020, Defendant, represented by counsel, moved this Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 146.) Defendant argues that because he has Type II diabetes, obesity, cluster headaches, epilepsy, depression, and post-traumatic stress disorder, he faces a high risk of severe illness should he contract COVID-19 while incarcerated. (Id.) The government opposes his motion. (ECF No. 147.) Defendant filed a reply on December 17, 2020. (ECF No. 153.)

## II.  LEGAL STANDARD

### A. Standard of Review

Unless an exception applies, a "court may not modify a term of imprisonment once it has been imposed." United States v. Pinto-Thomaz, No. 18-CR-579, 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020) (quoting 18 U.S.C. § 3582(c)). The First Step Act, which modified 18

U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).

The statute provides courts with discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, No. 19-CR-3218, 2020 WL 5739712, at *7 (2d. Cir. Sept. 25, 2020) (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."); see also Simon v. United States, No. 07-CR-474, 2020 WL 5764322, at *2-3 (S.D.N.Y. Sept. 28, 2020) (quoting Brooker, 2020 WL 5739712, at *7).

Even if extraordinary and compelling reasons exist, a "court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would

otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-57, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020); see also Simon, 2020 WL 5764322, at *3.

### III. DISCUSSION

#### A. Exhaustion

The parties do not dispute that Defendant exhausted his administrative remedies.

#### B. Extraordinary and Compelling Reasons for Release

Defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." United States v. Gotti, No. 02-CR-743-07, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020).

Defendant argues that because of his Type II diabetes and obesity, as well as other medical conditions including cluster headaches, epilepsy, depression, and post-traumatic stress disorder, he has an increased risk of severe illness should he contract COVID-19. (ECF No. 146 at 8-14.) In support, Defendant attaches his BOP medical records which state that he has diabetes, a BMI of 29.9, major depressive disorder, post-traumatic stress disorder, epilepsy, and cluster headaches. (ECF No. 146-2.) Defendant also argues that the conditions at FCI Fort Dix, including the number of inmates who have tested positive for COVID-19 and the policies and practices of the BOP that have been put in place in response to COVID-19, necessitate his release. (Id. at 5-6; ECF No. 153 at 2.) The government argues that while Defendant suffers from various health conditions, there is no indication he will contract COVID-19 or become seriously ill from it should he contract it. (ECF No. 147 at 12-13.) The government also argues that "the BOP has taken the threat [of COVID-19] seriously, has mitigated it, and continues to update policies and procedures in accord with the facts and recommendations." (Id. at 13.)

4

Though the Court is sympathetic to Defendant's medical conditions, it is by no means certain Defendant will contract COVID-19, particularly in light of: (1) the protective measures the BOP has taken to curb spread of the disease; and (2) the fact that the number of inmates currently testing positive for COVID-19 at FCI Fort Dix is 17.[1]  See United States v. Weingarten, No. 08-CR-571, 2020 WL 2733965, at *3 (E.D.N.Y. May 26, 2020) (denying defendant's motion for compassionate release from FCI Fort Dix and noting that it was by no means certain defendant would contract COVID-19 "in light of the current health conditions at Fort Dix and the protective measures that it is taking to quell the disease's spread"); United States v. Gibson, No. 17-CR-0657-1, 2020 WL 7343802, at *4 (E.D.N.Y. Dec. 14, 2020) (internal citations omitted) (denying defendant's motion for compassionate release from FCI Fort Dix and noting that "as reflected in the records maintained by the BOP, nearly all the inmates at FCI Fort Dix who recently contracted COVID-19 have since recovered . . . 'The Court is mindful that the risk that COVID-19 will return to [FCI Fort Dix] cannot be fully eliminated' but finds the downward trend reassuring.")  The "mere existence of COVID-19 cases does not reflect that BOP is incapable of managing the pandemic within its facilities or otherwise entitle [defendant] to relief." United States v. Morales, No. 94-CR-112, 2020 WL 4926609, at *4 (D. Conn. Aug. 20, 2020).

The Court acknowledges that Defendant's Type II diabetes and obesity place him at a heightened vulnerability for experiencing complications were he to contract the virus.  However, courts have denied compassionate release motions by defendants with diabetes and obesity. See, e.g., United States v. Mavumkal, No. 17-CR-654, 2020 WL 4365279, at *1 (S.D.N.Y. July 30, 2020) (denying compassionate release to defendant with severe obesity, diabetes, and high

---

[1] On December 22, 2020, the number of inmates at FCI Fort Dix testing positive for COVID-19 is 17 and the number of staff testing positive for COVID-19 is 18.  To date, 356 inmates and 36 staff have recovered from COVID-19 at this facility.  See Federal Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus (providing daily calculations of confirmed infections) (accessed on December 22, 2020, at 12:15 p.m.).

cholesterol). Even if the Court were to assume, arguendo, that Defendant's "medical conditions put him at higher risk than the average inmate" to the effects of COVID-19, the relevant sentencing factors do not support a reduction of his sentence, as explained below. United States v. Carter, 18-CR-390, 2020 WL 3051357, at *3 (S.D.N.Y. June 8, 2020).

### C. Consideration of Section 3553(a) Factors

The Section 3553(a) sentencing factors weigh against granting compassionate release.[2] This Court sentenced defendant to 121 months imprisonment. Granting his motion would mean that Defendant would serve under 50% of his original sentence and be released over 4 years prior to his projected release date. Compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. A reduction of the Court's original sentence would also fail to reflect the seriousness of the offenses Defendant committed and would not provide a just punishment for his conduct. It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct. Accordingly, the Section 3553(a) factors weigh against granting Defendant's motion.

---

[2] These factors are:
   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
   (2) the need for the sentence imposed—
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3) the kinds of sentences available;
   (4) [the kinds of sentences and sentencing range provided for in the USSG]
   (5) any pertinent [Sentencing Commission policy statement]
   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion is DENIED. This application is denied without prejudice to its renewal should Defendant's condition or the situation at his facility materially worsen.

**SO ORDERED.**

Dated: December 22, 2020
      Central Islip, New York

                                                                    /s/ (JMA)
                                                                   JOAN M. AZRACK
                                                                   UNITED STATES DISTRICT JUDGE